IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JOSEPH BREWER, ) | |
| ) | JURY DEMAND |
| Plaintiff, ) | |
| ) | Case No. 23-CV-___ |
| v. ) | |
| ) | |
| BLOOMINGTON & NORMAL WATER ) | |
| RECLAMATION DISTRICT, an Illinois ) | |
| unit of local government, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES the Plaintiff, JOSEPH BREWER (hereinafter referred to as "BREWER"), by and through his attorneys, Costigan & Wollrab, P.C., and for his Complaint against the Defendant, BLOOMINGTON & NORMAL WATER RECLAMATION DISTRICT, an Illinois unit of local government, (hereinafter referred to as "BNWRD"), states as follows:

**I.   JURISDICTION**

1. That this action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.,* (hereafter referred to herein as the "Civil Rights Act") which, together with 28 U.S.C. § 1331, vests this Honorable Court with jurisdiction over this cause.

2. That BREWER has fully complied with all administrative prerequisites to the filing of this suit. Namely, BREWER timely filed a "Charge of Discrimination" based on gender and sexual discrimination and retaliation with the U.S. Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC") and received a "Right to Sue Letter." A true and accurate copy of the "Right to Sue Letter" is attached hereto and incorporated herein as "Plaintiff's Exhibit A."

3. That this Complaint is being filed within ninety (90) days of BREWER's receipt of the aforementioned "Right to Sue Letter", which letter was received by counsel for BREWER on July 27, 2023.

## II. VENUE

4. That venue is properly placed in the U.S. District Court for the Central District of Illinois, Peoria Division, pursuant to 28 U.S.C. § 1391(b). BREWER is a resident of McLean County, Illinois and BNWRD conducts business and maintains a place of business in McLean County, Illinois. Furthermore, the acts complained of herein occurred within the Peoria Division.

## III. PARTIES

5. That BREWER is a citizen of the United States, a male and a resident of McLean County, Illinois, and is a legal adult over the age of eighteen (18).

6. That BNWRD is an Illinois unit of local government which is situated in McLean County, Illinois.

7. That BNWRD is an employer within the meaning of the Civil Rights Act.

## IV. ALLEGATIONS

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8. BREWER was hired by BNWRD in or around September 2008 as a Laboratory Technician. After obtaining his bachelor's degree in or around 2021, BREWER was promoted by BNWRD to a Chemist 2 position, which BREWER held until the involuntary termination of his employment by BNWRD on May 14, 2021.

**FACTS COMMON TO ALL COUNTS**

9. In 2019, Joy Hall (hereinafter, "Hall") was promoted by BNWRD to Director of Laboratory Services. Prior to 2019, Hall was employed by BNWRD in a Chemist 1 position. As a result of her promotion, Hall became BREWER's direct supervisor.

10. BREWER is a male.

11. Hall is a female.

12. At all times relevant herein, BNWRD had enacted an "Open-Door Policy" with respect to the processes available to employees of BNWRD to raise concerns regarding issues arising within the working environment.

13. In or around December 2019, BREWER made a formal complaint with the Director for Human Resources of BNWRD that Hall was routinely engaging in hostile, unfair and adverse treatment of BREWER due to his gender and his sex thereby creating a hostile work environment which BREWER believed was due to BREWER being a male and HALL being a female.

14. Specifically, BREWER reported that Hall had given BREWER a reprimand citing his failure to perform certain tasks in the lab; when further investigation revealed that the asserted performance failures in the lab alleged by Hall were not the responsibility of BREWER. Additionally, as a punishment to BREWER for Hall's assertions that there were deficiencies occurring in the work performed in the lab, Hall suspended BREWER's ability to complete certain homework preparations for classes he was attending to secure additional certifications of skills related to his employment with BNWRD. Hall had no basis to suspend BREWER's ability to work on homework during his work hours when his other work was completed; and prior to the date of Hall's order that BREWER refrain from doing homework while he was working at BNWRD,

BREWER had previously been granted that employee benefit; and BREWER had not committed any act that: i) gave Hall reason to suspend his ability to do homework while at BNWRD; and ii) provided any basis for Hall to give BREWER a reprimand.

15. In addition, BREWER complained to Human Resources personnel that Hall was unfairly targeting him due to an issue with regard to whether BREWER was required to make up hours related to BREWER's attendance at a BNWRD approved job related class. BREWER asserted that Hall as a female employee had been allowed to take advantage of attending classes while she was in the employ of BNWRD and she had not had to perform make up hours for time she had been away from BNWRD and attending classes; but Hall advised BREWER that he would have to make up any hours he missed working in the lab due to his attending classes that had been approved by BNWRD for BREWER to attend.

16. As a result of BREWER's complaints to Human Resources regarding the actions of Hall in December of 2019, BNWRD engaged its legal counsel to conduct an internal investigation of the circumstances alleged as occurring between BREWER and Hall.

17. After conducting her investigation, BNWRD's legal counsel concluded that the circumstances described by BREWER did not rise to the level of a hostile work environment per se; but BNWRD's legal counsel did conclude that Hall's actions towards BREWER contributed to tension in the parties' working relationship; and further concluded that Hall would benefit from additional management training. BNWRD's legal counsel also concluded that the reprimands Hall imposed on BREWER in 2019 were not in agreement with certain existing BNWRD policies regarding employee duties and privileges; and other policies of BNWRD were not consistently enforced against all employees.

18. BREWER continued working for BNWRD on and after the investigation conducted in December of 2019; and BREWER continued working under the direct supervision of Hall after the investigation was concluded in December of 2019.

19. Hall closely monitored BREWER's job performance on and after December 2019; and BREWER believed that Hall held BREWER to a higher degree of expectation in his job duties as opposed to other employees who were supervised by Hall. Additionally, Hall did not hold BREWER in the same esteem after BREWER reported his allegations of hostile work environment against Hall in December of 2019. There were ongoing issues in controversy between BREWER and Hall after December of 2019 and to the spring of 2021 that led BREWER to believe that Hall was targeting him due to his reports made against her to Human Resources.

20. On or about April 16, 2021, Hall called the BNWRD Director of Human Resources to report alleged minor incidents of misconduct by BREWER.

21. Upon investigation, the BNWRD Director of Human Resources advised Hall that BREWER's actions were not misconduct and instead the product of misunderstanding by Hall.

22. On or about April 19, 2021, BREWER met with the BNWRD Director of Human Resources, Assistant Executive Director, and BNWRD's legal counsel to discuss various issues which continued between himself and Hall, and his belief that the situation continued to present a hostile work environment.

23. As a result of BREWER's complaint made in April of 2021, BNWRD engaged its legal counsel to conduct a second internal investigation of the circumstances between BREWER and Hall.

24. BREWER agreed to accept a temporary reassignment to a maintenance position with BNWRD to allow BNWRD's legal counsel to complete her second investigation.

25. Shortly thereafter, on or about May 14, 2021, BREWER was involuntarily terminated from his employment with BNWRD.

26. At all times relevant herein and up to BREWER's involuntary termination, BREWER had performed his job in a satisfactory manner and was meeting the legitimate business expectations of BNWRD.

27. In its termination letter, BNWRD cited several purported bases for its decision to terminate BREWER, including BREWER's past reports to Human Resources, unwillingness to work with Hall, and determinations by BNWRD's legal counsel with respect to the internal investigations described above. Prior to May 14, 2021, BREWER had never received any disciplinary action for any policy or alleged rule infraction.

28. BNWRD has and had, at all times relevant herein, enacted the written "Open-Door Policy" ("Policy"), which Policy encouraged open communication by employees regarding issues arising within the working environment such that BREWER was not prohibited from making the aforementioned reports to Human Resources.

29. The investigations conducted by BNWRD's legal counsel revealed that any dispute between BREWER and Hall was mutual in nature, and that Hall's conduct contributed to the tension in the parties' relationship and working environment.

30. Despite Hall's own conduct which contributed to the tensions in the working relationship between Hall and BREWER, and despite the prior complaints BREWER had made to Human Resources regarding Hall, BNWRD retained and continues to retain Hall in its employ.

31. BNWRD showed favoritism to its female employee in allowing Hall to remain in her position as a supervisor with BNWRD; and BNWRD's action in terminating BREWER for the

matters set forth in the letter of termination issued by BNWRD to BREWER were pretext for BREWER's continued reports of harassment and hostile work environment against Hall.

**COUNT I – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT'S PROHIBITION AGAINST GENDER DISCRIMINATION AND SEXUAL HARASSMENT**

1.-31.    BREWER incorporates Paragraphs One (1) through Thirty-One (31) above in this Count I as if fully set forth below.

32.    BNWRD is an Illinois municipal corporation engaged in an industry affecting commerce and a covered employer as defined by Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b) ("Title VII").

33.    BREWER was, at all times relevant herein, an employee as defined by Title VII, 42 U.S.C. § 2000e(f).

34.    Title VII provides that it shall be an unlawful employment practice for an employer to "…fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2.

35.    Hall's ongoing hostile attitude and conduct towards BREWER was grounded in discriminatory motive based on BREWER's sex and gender.

36.    BNWRD's decision to terminate BREWER while retaining Hall was grounded in discriminatory motive based on BREWER's sex and gender.

37.    BNWRD's preferential treatment of Hall was grounded in discriminatory motive based on BREWER's sex and gender.

38. The reasons cited by BNWRD in its termination letter for its decision to terminate BREWER's employment are pre-textual and were stated by BNWRD in an effort to obscure BNWRD's discriminatory motive and intent.

39. As a result of BNWRD's unlawful discriminatory action in violation of Title VII, BREWER has sustained damages, including but not limited to lost compensation plus loss of time and other resources, and emotional distress resulting from BNWRD's failure to acknowledge hostile working conditions imposed by Hall and BREWER's wrongful discharge.

WHEREFORE, the Plaintiff, JOSEPH BREWER, respectfully prays that this Honorable Court enter a judgment in favor of the Plaintiff and against the Defendant, BLOOMINGTON & NORMAL WATER RECLAMATION DISTRICT on Count I of Plaintiff's Complaint; and further prays for the granting of the following relief:

A. Reinstatement to Plaintiff's position with BNWRD with all back-pay, employee benefits, and IMRF pension benefits restored;

B. An award of front-pay and all prospective lost benefits in the event that no comparable position is available; and

C. Compensatory and liquidated damages, including attorney's fees and costs, in an amount that will fully and fairly compensate him for his injuries and damages, including, but not limited to, back-pay, front-pay, employee benefits and other emoluments of employment, and for any and all further relief that this Honorable Court deems equitable and just.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT, 42 U.S.C. § 2000e, *et. seq*

1-31. BREWER incorporates Paragraphs One (1) through Thirty-One (31) above in this Count II as if fully set forth below.

32. Title VII further provides that it shall be an unlawful employment practice for an employer to "…discriminate against any of his employees or applicants for employment…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing..." 42 U.S.C. § 2000e-3.

33. BREWER made formal reports to the BNWRD Director of Human Resources regarding unfair employment practices by Hall, specifically his belief that Hall's ongoing hostile attitude and conduct towards BREWER was grounded in discriminatory motive based on BREWER's sex and gender.

34. In addition to the discriminatory motive as described hereinabove, BNWRD's termination of BREWER was furthermore made in retaliation for BREWER's alleging and prompting investigations of BNWRD's ongoing discrimination by failing to acknowledge the hostile working conditions imposed by Hall on BREWER on the basis of the BREWER's sex and gender.

35. As a result of BNWRD's unlawful retaliation against BREWER in violation of Title VII, BREWER has sustained damages, including but not limited to lost compensation plus loss of time and other resources, and emotional distress resulting from BNWRD's failure to acknowledge hostile working conditions imposed by Hall and BREWER's wrongful discharge.

WHEREFORE, the Plaintiff, JOSEPH BREWER, respectfully prays that this Honorable Court enter a judgment in favor of the Plaintiff and against the Defendant, BLOOMINGTON & NORMAL WATER RECLAMATION DISTRICT on Count II of Plaintiff's Complaint and further prays for the granting of the following relief:

 A. Reinstatement to Plaintiff's position with BNWRD with all back-pay, employee benefits, and IMRF pension benefits restored;

 B. An award of front-pay and all prospective lost benefits in the event that no comparable position is available; and

 C. Compensatory and liquidated damages, including attorney's fees and costs, in an amount that will fully and fairly compensate him for his injuries and damages, including, but not limited to, back-pay, front-pay, employee benefits and other emoluments of employment, and for any and all further relief that this Honorable Court deems equitable and just.

**PLAINTIFF, JOSEPH BREWER, DEMANDS TRIAL BY A JURY ON ALL COUNTS OF THIS COMPLAINT.**

       Respectfully Submitted,

       Plaintiff, JOSEPH BREWER,

       **/s/ Dawn L. Wall**

       By: _____
       Ms. Dawn L. Wall
       ARDC No. 6196948
       Costigan & Wollrab, P.C.
       308 East Washington Street
       Bloomington, Illinois 61702
       Telephone: (309) 828-4310
       Fax: (309) 828-4325
       **dwall@cwlawoffice.com**